855 So.2d 271 (2003)
FLORIDA HOSPITAL WATERMAN, Petitioner,
v.
Theresa STOLL and Ronald Stoll, Respondents.
No. 5D02-1053.
District Court of Appeal of Florida, Fifth District.
October 3, 2003.
*272 Larry D. Hall and Brian D. Equi of Hill, Adams, Hall & Schieffelin, P.A., Winter Park, for Petitioner.
Brent C. Miller and Thomas D. Hippelheuser of the Law Office of Brent C. Miller, P.A., Leesburg, for Respondents.

ON PETITIONER'S MOTIONS FOR REHEARING, CLARIFICATION AND CERTIFICATION

SHARP, W., J.
We deny the motions for rehearing, clarification, and certification filed by petitioner Florida Hospital Waterman. Nevertheless, we withdraw our November 8, 2002 opinion and substitute the following opinion, which more fully explains our reasons for denying Florida Hospital Waterman's request for certiorari review.
In this medical malpractice case, petitioner Florida Hospital Waterman, the defendant below, seeks a writ of certiorari from this court to overturn the trial court's order which in essence rejected its claim that the statute of limitations had expired before the respondent Theresa Stoll, the plaintiff below, provided a verified written medical expert opinion as mandated by the pre-suit screening statute.[1] We conclude the Hospital failed to timely raise this issue and thus waived the statute of limitations defense.
The chronology of this case, as established by the record, is essential to our analysis. Theresa Stoll was a patient at the Hospital, which is located in Lake County, Florida, from March 6 through March 10, 1998. On March 9, 1998, fluid from an IV line infiltrated her arm beyond the blood vessels and allegedly caused her personal injuries. Stoll contacted an attorney who had her request a copy of her medical records from the Hospital on April 17, 1998.
In August 1999, Stoll's attorney sent a letter to the Hospital stating he was willing to resolve the matter without litigation for 2.5 million dollars. The Hospital responded by stating it intended to avail *273 itself of the protections afforded under the Medical Malpractice Reform Act and specifically the 90-day presuit discovery period.
On June 2, 2000, Stoll's attorney sent the Hospital a notice of intent to sue for medical malpractice:
Please be advised that Theresa Stoll intends to commence litigation against you for injuries sustained in relation to her March 1998 treatment at your facility. Ms.Stoll was treated for gastrointestinal bleeding first in your emergency room and later as an admitted patient. A part of her treatment consisted of blood transfusions and IV therapy. During the course of the transfusions and IV therapy fluid infiltrated into her arm on a massive scale causing injury to the muscles, nerves, veins, arteries and other aspects of her right arm.
Your staff failed to properly monitor the blood transfusion and IV treatments and further failed to detect and take corrective actions when the infiltration was discovered. All of these acts are below the applicable standard of medical care.
As a result of your staff's failure to properly treat my client she has sustained permanent injury to her right arm. Ms. Stoll has suffered a thrombosed cephalic vein and has developed related problems from this including but not limited to Reflex Sympathetic Dystrophy, thrombophlebitis of the cephalic vein, post phelbitic syndrome and pain in her arm, neck, back and shoulders. In addition, Ms. Stoll has suffered loss of income and earning ability, and has and will incurred (sic) medical expenses for treatment of the injury caused by your staff.
I am enclosing the affidavits of Dr. Gabor Kovacs and Patricia Beare, R.N., Ph.D. as corroborative opinions.
The corroborating opinion from Dr. Kovacs, a physician in New Jersey, was in the form of a letter to Stoll's attorney. The letter was notarized by a New Jersey notary public but was not stated as sworn to by Dr. Kovacs, nor did he attempt to verify his opinion. In this letter, Dr. Kovacs concluded: "the failure to closely monitor and to immediately discontinue the intravenous catheter at the time when it infiltrated fails to meet the accepted standard of medical care. As a result of this failure the patient has suffered thrombophlebitis of her cephalic vein along with edema and post phlebitic syndrome of her right upper extremity."
The other corroborating opinion was from Patricia Beare, a registered nurse and nursing professor from Louisiana. Dr. Beare concluded: "it is my opinion that as a direct result of the substandard care described above, Stoll experienced a substantial amount of blood and/or fluid loss into the right arm resulting in pain, weakness, and injury to the veins of the right arm." Her opinion did not have a completed notary certificate establishing an oath was administered; nor did she verify her opinion in any manner.
On June 19, 2000, the Hospital acknowledged receipt of the notice of intent to sue. The Hospital noted Stoll's claim involved damages that allegedly occurred in March of 1998, which was then beyond the two-year statute of limitations for medical negligence claims, and requested documentation that the statute of limitations had not run. The Hospital also asked for informal discovery as provided in section 766.106, including tax returns filed by Stoll since 1993.
Stoll's attorney informed the Hospital he filed a petition for extension pursuant to chapter 766 and this claim was well within the statute of limitations. He provided *274 some of the medical information requested but felt Stoll's tax returns were not relevant since she was not working prior to her hospitalization, in March of 1998.
On August 27, 2000, the Hospital requested Stoll's chiropractic records and documentation of Stoll's educational and employment history to support her claims for loss of income and earning ability. The Hospital also noted it had written off $14,627.89 in hospital and outside provider charges and bills as a goodwill gesture. Stoll's attorney replied he had given the Hospital all of Stoll's chiropractic records and that Stoll had been looking for work in the food service field.
On August 30, 2000, the Hospital sent Stoll's attorney a letter stating that, after investigation, it rejected Stoll's claim: "We have also had the case reviewed by an appropriate medical expert; and it is our finding that Florida Hospital Waterman and its nursing personnel provided appropriate care and treatment to Theresa Stoll, including their monitoring of her IV sites and response to the infiltration (which is a known risk of IV therapy) ..." The Hospital attached an affidavit from a registered nurse to support its rejection of Stoll's claim.[2]
On September 5, 2000, Stoll and her husband filed this medical malpractice action against the Hospital in Orange County. The complaint alleged in part:
11. Defendant, Florida Hospital Waterman, Inc., is vicariously liable for the acts/omissions of its staff and employees and agents, actual, apparent, ostensible, or otherwise, whom discovery reveals may have been negligent in the care and treatment of Theresa Stoll.
12. Defendant, Florida Hospital Waterman, Inc. is directly liable for inadequate staffing and/or negligent hiring which may be uncovered as the case progresses.
13. Defendant, Florida Hospital Waterman, Inc. is further directly liable for any non-conformities with Florida Statute § 766.110 including, but not limited to: Assuring the competence of its medical staff and personnel; selecting and retaining competent medical staff and personnel; diligently supervising its medical staff and personnel; adopting adequate written procedures for the selection of medical staff and personnel; performing periodic reviews of the medical care rendered by each member of its medical staff; and selecting and retaining competent doctors, although those doctors may be independent practitioners.
14. At some point in time between the initial admission to Florida Hospital Waterman, Inc. and March 9, 2000(sic) fluid infiltrated into arm beyond the blood vessels and began to cause injury to Theresa Stoll.
15. Upon initial discovery of infiltration of the fluids Florida Hospital Waterman, Inc.'s staff and employees failed to diagnose and properly treat the infiltration causing further injury.
On or about October 4, 2000, the Hospital moved to dismiss and/or strike the complaint. First, the Hospital alleged Stoll's attorney failed to provide information to support his client's claims for loss of income and earning ability despite its repeated requests for such information. The Hospital asserted it was effectively *275 denied the ability to evaluate the merits of the claim and the complaint should be dismissed for the unreasonable failure of Stoll's attorney to cooperate during the pre-suit investigation.
Next, in the event the complaint was not dismissed, the Hospital requested all allegations of negligence "unrelated to issues involving detection and corrective actions regarding IV infiltration" be stricken from the complaint. The Hospital claimed Stoll's counsel failed to put it on notice of other allegedly negligent acts during the pre-suit investigation as required by section 766.106(2). According to the Hospital, no mention was made in Stoll's notice of intent of the claim for negligent staffing, hiring, credentialing and/or negligent supervision as alleged in paragraphs 12 and 13 of the complaint. Finally, the Hospital moved to strike Stoll's request for attorney's fees for failure to allege a statutory or contractual right to such fees.
Nowhere in this motion did the Hospital allege the corroborating opinions from Dr. Kovacs and Dr. Beare were insufficient or defective or that they failed to comply with the pre-suit requirements.
At the same time, the Hospital also moved to dismiss for improper venue or to transfer the case to the appropriate venue (Lake County). About a month later, on November 3, 2000, the trial court granted this motion and transferred the case to Lake County.
At a hearing on June 25, 2001 concerning the merits of its motion to dismiss, the Hospital, apparently for the first time, orally attacked the plaintiffs' June 2, 2000 notice of intent to sue on the basis that the corroborating medical opinions were insufficient. The Hospital argued the letter from Dr. Kovacs was not verified and the opinion from Dr. Beare was not notarized.[3]
The Hospital then argued the grounds discussed above which it raised in its motion to dismiss/strike. The Hospital also argued the causes of action were "mixed up with one another" and the complaint should be repled.
In response, Stoll's attorney argued Dr. Kovacs' letter was properly notarized pursuant to New Jersey law and was "impliedly" verified because it was signed in the presence of the notary. However, he agreed with the Hospital the complaint should be amended to separate the causes of action. He also agreed to drop the claim for attorney's fees.
The court indicated it would permit Stoll to amend the complaint and to obtain a properly verified statement from Dr. Kovacs. The Hospital pointed out there may be a problem with the verification since the alleged medical malpractice took place in March of 1998, more than three years ago. Since the trial court found the supporting documents were not verified, the Hospital asked the court to dismiss the complaint "perhaps without prejudice." The Hospital's motion to dismiss was granted without prejudice and with leave to amend.
*276 Stoll's attorney obtained an affidavit from Dr. Kovacs on July 27, 2001 and filed it with the court on August 3, 2001. Stoll's attorney also filed a first amended complaint and a second amended complaint. The Hospital again moved to dismiss or strike Stoll's complaints. The trial court granted some relief to the Hospital but did not dismiss the complaint with prejudice. The Hospital now seeks certiorari review arguing the trial court departed from the essential requirements of law in failing to dismiss Stoll's complaint as barred by the statute of limitations for medical negligence because the two medical opinions required by the statute were not properly verified.[4]
Chapter 766 sets out a complex presuit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be filed in court. Kukral v. Mekras, 679 So.2d 278 (Fla.1996). Prior to issuing a notice of intent to initiate a medical malpractice lawsuit, the claimant must conduct an investigation to ascertain there are reasonable grounds to believe that any named defendant in the litigation was negligent and that such negligence resulted in injury to the claimant. §§ 766.104(1), 766.203(2). After completing the presuit investigation and prior to filing a claim for medical malpractice, the claimant must notify each prospective defendant of his or her intent to initiate litigation for medical malpractice. Section 766.203(2) requires the claim be corroborated by at least one "verified written medical expert opinion" which must be furnished by the claimant.
Compliance with the presuit requirements is a condition precedent to filing a medical malpractice action. However, failure to comply does not divest the court of subject matter jurisdiction. Hospital Corporation of America v. Lindberg, 571 So.2d 446 (Fla.1990). The failure to comply with the presuit requirements is not fatal to a plaintiff's claim so long as compliance is accomplished within the statute of limitations period. Kukral.
The statute of limitations for a medical malpractice action is two years. § 95.11(4)(b), Fla. Stat. However, chapter 766 provides numerous extensions. See § 766.104(2); § 766.106(3)(a); § 766.106(4). The Hospital calculates the statute of limitations expired in this case on December 13, 2000, shortly after it was transferred to Lake County and well before Stolls' attorney obtained the affidavit from Dr. Kovacs on July 27, 2001.
Although compliance with the presuit requirements is a condition precedent to filing a medical malpractice action, the failure to comply may be excused upon a showing of estoppel or waiver. Ingersoll v. Hoffman, 589 So.2d 223 (Fla.1991). In that case, the Ingersolls filed a dental malpractice suit against Howard Hoffman. The following day, they amended the complaint to join as a defendant Howard's brother, Warren Hoffman, and ultimately dismissed Howard from the suit. On the day of trial, Warren filed a motion to dismiss, alleging he had not been served with a notice of intent to initiate litigation for malpractice.
Apparently the only notice of intent had been sent to Howard. The trial court dismissed the suit on jurisdictional grounds for failure to provide the notice of intent. The district court of appeal affirmed and certified the question whether *277 the failure to comply with the presuit requirements deprives the trial court of subject matter jurisdiction, or whether the lack of such notice may be excused by a showing of estoppel or waiver.
The Florida Supreme Court held the failure to follow the presuit requirements is not jurisdictional. The court also held Hoffman waived the Ingersolls' failure to comply by failing to timely raise the issue:
The amended complaint contained a specific allegation that the Ingersolls had complied with all conditions precedent to the filing of the suit..... In his answer, Warren Hoffman made only a general denial of the allegation of compliance with all conditions precedent. The answer contained no reference to the Ingersolls' failure to comply with section 768.57 [renumbered as § 766.106]....
We do not suggest that under appropriate circumstances a defendant could not amend the answer so as to specifically deny the performance of a condition precedent. The test as to whether an amendment to a pleading should be allowed is whether the amendment will prejudice the other side.... Had Hoffman timely raised the defense of failure to follow the requirements of section 768.57, the Ingersolls could have attempted to comply with the statute within the period of the statute of limitations. An amendment to Hoffman's pleadings after the statute of limitations had run would have unfairly prejudiced the Ingersolls.
589 So.2d at 224-225.
Here the Hospital's October 4, 2000 motion to dismiss or strike the Stolls' complaint raised only the following grounds: the failure of Stoll's attorney to provide information regarding his client's claim for economic damages; the lack of notice of the claim for negligent hiring and staffing; and the lack of a basis to support a claim for attorney's fees. The motion did not allege the corroborating opinions from Dr. Kovacs or Dr. Beare were defective. Nor did the Hospital allege Stoll failed to comply with the statutory requirement to provide a "verified" medical expert opinion. Had the Hospital raised these concerns in its motion, the Stolls could have complied before the statute of limitations expired, that is, by December 13, 2000.
Because the Hospital did not raise any issue concerning the adequacy of the corroborating opinions until the June 21, 2001 hearing, which was more than six months after filing its motion to dismiss, and also after the expiration of the limitations period, we conclude the Hospital, like Hoffman, waived compliance in this case by failing to timely raise the issue in its motion to dismiss and/or strike. Ingersoll.
We distinguish this case from Royle v. Florida HospitalEast Orlando, 679 So.2d 1209 (Fla. 5th DCA 1996), rev. denied, 689 So.2d 1071 (Fla.1997), because Royle did not involve the issue of waiver. In that case, the defendant healthcare providers objected to the lack of a verified medical expert opinion at their first opportunity. After the plaintiff filed her medical negligence complaint, one defendant moved to dismiss the complaint and the other defendant moved for summary judgment. Both defendants contended the relief requested was warranted because the plaintiff failed to provide corroboration of reasonable grounds to initiate medical negligence litigation by the submission of a verified written medical expert opinion.
The opinion in Royle does not state exactly when the statute of limitations had expiredonly that it had expired by the time the trial court ruled on those motions. In this case, the Hospital failed to raise the verification issue in its October 2000 motion *278 to dismiss/strike (when the statute of limitations had not yet expired) and raised the issue only orally at the June 2001 hearing (after the statute of limitations had expired). To allow the Hospital to "amend" its motion to dismiss by including this new ground for relief after the statute of limitations had expired, would have unfairly prejudiced the Stolls. Ingersoll.
Petition for Writ of Certiorari DENIED.
GRIFFIN and ORFINGER, JJ., concur.
NOTES
[1] § 766.106, Fla. Stat.
[2] The Hospital also claimed Stoll's brief response that she was looking for work in the food service area was inadequate and not in good-faith.
[3] The statutes requiring that claimants provide a verified written medical expert opinion in a medical malpractice action do not mention notarization, the requirement being "verification." Royle v. Florida Hospital-East Orlando, 679 So.2d 1209 (Fla. 5th DCA 1996), rev. denied, 689 So.2d 1071 (Fla. 1997); Mieles v. South Miami Hosp., 659 So.2d 1265 (Fla. 3d DCA 1995). Section 92.525 provides that verification may be accomplished by either an oath taken before an officer authorized to administer oaths, such as a notary, or by the signing of the written declaration prescribed in subsection two. As noted above, neither Dr. Kovacs' letter nor Dr. Beare's opinion had a completed notary certificate establishing that an oath had been administered, nor did they contain words of verification pursuant to section 95.525(2), Florida Statutes.
[4] Certiorari is appropriate to review an order denying a motion to dismiss which claims the presuit requirements of chapter 766 have not been met. Central Florida Regional Hospital v. Hill, 721 So.2d 404 (Fla. 5th DCA 1998); Sova Drugs, Inc. v. Barnes, 661 So.2d 393 (Fla. 5th DCA 1995).