880 So.2d 787 (2004)
Paul J. YOCOM, D.C., Appellant,
v.
WUESTHOFF HEALTH SYSTEMS, INC., et al., Appellee.
No. 5D03-2847.
District Court of Appeal of Florida, Fifth District.
July 16, 2004.
Rehearing Denied August 17, 2004.
*788 Paul J. Yocom, Titusville, Pro Se.
Michael R. D'Lugo of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Orlando, for Appellee.
MONACO, J.
Dr. Paul J. Yocom appeals the dismissal with prejudice of his third amended complaint in which he sought damages for medical malpractice against Wuesthoff Health Systems, Inc. While Dr. Yocom raises several issues challenging the dismissal in his appeal, the resolution of one issue appears to be dispositive. The trial court found that Dr. Yocom failed to comply with the malpractice presuit requirement to provide a verified written medical expert opinion to support the claim of malpractice, and that dismissal was appropriate in light of his noncompliance. We find no error and affirm.
The path traveled by this case to our doorstep is tortured, to say the least. Dr. Yocom is a doctor of chiropractic medicine who underwent a surgical procedure for the removal of a left ureteral stone at a hospital operated by Wuesthoff. He alleges that he suffered damages as a result of injury to his ureter incurred during multiple attempts to remove the stone. He sued Wuesthoff, as well as two physicians who treated him, although one physician was apparently dropped as this case progressed. Our appeal, however, involves only Wuesthoff.
While it is somewhat unclear, it appears that Dr. Yocom initiated a malpractice presuit investigation pursuant to section 766.203(2), Florida Statutes (2001), with respect to Wuesthoff, but failed to submit a verified written medical expert opinion from a medical expert, as required by the statute. Thereafter, in accordance with section 766.204, Florida Statutes (2001), Dr. Yocom sent a series of letters to Wuesthoff requesting that Wuesthoff provide him with copies of his medical record. Unfortunately, almost all of these letters appear to have been sent to the wrong physical address, and Wuesthoff denied receiving most of them. Wuesthoff did, however, admit to receiving one letter, to which it responded within two days. It did not respond by providing the records. Rather, it related to Dr. Yocom the copying charges that would be incurred, and required that he first pay this amount. The responsive letter also instructed Dr. Yocom to contact Executive Records Services, who apparently had physical custody of the records as the agent of Wuesthoff, and required him to execute a document waiving confidentiality in the provision of the records. Perhaps we should stop for a moment to analyze this.
Section 766.204 reads in its entirety, as follows:
(1) Copies of any medical record relevant to any litigation of a medical negligence claim or defense shall be provided to a claimant or a defendant, or to the attorney thereof, at a reasonable charge *789 within 10 business days of a request for copies, except that an independent special hospital district with taxing authority which owns two or more hospitals shall have 20 days. It shall not be grounds to refuse copies of such medical records that they are not yet completed or that a medical bill is still owing.
(2) Failure to provide copies of such medical records, or failure to make the charge for copies a reasonable charge, shall constitute evidence of failure of that party to comply with good faith discovery requirements and shall waive the requirement of written medical corroboration by the requesting party.
(3) A hospital shall not be held liable for any civil damages as a result of complying with this section.
The statute requires the recipient to provide the records within ten days. It does not say that a bill for copies is to be provided in ten days.[1] It does not say that the medical provider can direct the requesting party to another entity to get the records. It certainly does not say that it can require a patient to execute a document waiving confidentiality when the documents are being provided specifically to the patient. While this procedure concerning confidentiality might make some sense if the records are being provided to someone other than the patient, it certainly should not apply when a patient is receiving his or her own records. See § 456.057(4) and (5), Florida Statutes (2002). Moreover, subsection (3) of the statute appears to make that requirement superfluous in any event. If the story ended here, we might say that Wuesthoff failed to comply with section 766.204, and that the requirement of written medical corroboration was waived pursuant to subsection (2) of that statute. See Medina v. Public Health Trust, 743 So.2d 541 (Fla. 3d DCA 1999); Watson v. Beckman, 695 So.2d 436 (Fla. 3d DCA 1997); Escobar v. Olortegui, 662 So.2d 1361 (Fla. 4th DCA 1995). But there is more.
Apparently, Dr. Yocom never got the letter from Wuesthoff, but six months later some how found out that Wuesthoff wanted $98.97 to reproduce the records. He asked for an explanation of that rather odd charge, but continued to write to the wrong address. He still did not get his records. Eventually, he brought suit. His complaint went through four iterations before it was dismissed with prejudice. During that period of time, Dr. Yocom got his medical records through discovery, and presumably Wuesthoff got its $98.97. There appeared to be no complaint from Dr. Yocom concerning the amount of the charges.
There were several hearings respecting the motions to dismiss filed by Wuesthoff and the other defendants to the various complaints filed by Dr. Yocom, including an evidentiary hearing on the motion to dismiss the third amended complaint during which the trial court commendably tried to sort out the facts. At an earlier hearing the trial court discussed with Dr. Yocom the necessity of having a written corroborative expert opinion. The purpose of a corroborating medical opinion is to assure the legitimacy of the claim and to prevent the filing of baseless claims. See Kukral v. Mekras, 679 So.2d 278 (Fla.1996); Otto v. Rodriguez, *790 710 So.2d 1, 2 (Fla. 4th DCA 1998). The court explained to Dr. Yocom that he could cure the failure to comply with the statutory presuit requirements, so long as the cure was accomplished within the two-year limitations period provided for filing suit. See Kukral, 679 So.2d at 283; Florida Hosp. Waterman v. Stoll, 855 So.2d 271, 276 (Fla. 5th DCA 2003); Cohen v. West Boca Med. Ctr., 854 So.2d 276, 278 (Fla. 4th DCA 2003); Central Fla. Reg'l Hosp. v. Hill, 721 So.2d 404, 406 (Fla. 5th DCA 1998). Dr. Yocom responded by having his partner, another doctor of chiropractic medicine, provide an opinion. When the trial court suggested that the opinion of an expert knowledgeable of the standard of care for a urological procedure was necessary, Dr. Yocom, to his credit, readily agreed that the affidavit he supplied was insufficient.
This trial court was, of course, correct in its understanding of the law governing corroborating affidavits. For presuit purposes,[2] the corroboration must come from a medical professional with appropriate experience or training about the subject upon which he or she is called to provide an opinion. See § 766.202(5), Fla. Stat. (2002); Apostolico v. Orlando Reg'l Health Care Sys., Inc., 871 So.2d 283 (Fla. 5th DCA 2004). Clearly a doctor of chiropractic is a medical professional. No evidence was ever produced, however, that indicated that the proposed expert possessed the requisite experience or training in urologic procedures that would enable him to offer a qualifying corroborating affidavit.
Dr. Yocom never came forward with a sufficient affidavit. Instead he relied on his assertion based on section 766.204(2) that Wuesthoff had waived that requirement by not properly responding to his records request. After the evidentiary hearing the trial court dismissed this case with prejudice, finding that Dr. Yocom had failed to obtain a verified written medical expert opinion to corroborate the malpractice, and finding further that Wuesthoff had not waived the affidavit requirement. Specifically, the court found that "any delay in receiving the requested medical records was caused by the Plaintiff's own errors, refusal to comply with instructions given to him, and lack of diligence." That fact finding comes to this court bearing the presumption of correctness. As Dr. Yocom failed to provide a corroborating medical expert opinion within the time required, the motion to dismiss was properly granted. See Godbold v. Cox-Novoa, 730 So.2d 767 (Fla. 5th DCA 1999).
We have considered Dr. Yocom's argument concerning the requirement of Wuesthoff to obtain informed consent from him prior to the operative procedure, but conclude that his position in this regard is without merit. See Cedars Med. Ctr., Inc. v. Ravelo, 738 So.2d 362 (Fla. 3d DCA 1999).
AFFIRMED.
SAWAYA, C.J., and SHARP, W., J., concur.
NOTES
[1] Although this is obviously a chicken-and-egg proposition, and although the matter is not directly raised in this appeal, we are concerned that a record custodian can greatly lengthen the time for record production by simply sending a bill. Normally these problems are worked out amicably between the parties. If they cannot be resolved, then perhaps the hospital should make the records and have them available within ten days, but not turn them over until payment of the "reasonable" copying charge is made.
[2] Chapter 766, Florida Statutes, was revised effective September 15, 2003. Ch.2003-416, section 87, Laws of Fla. The revisions apply to "any medical incident" for which the notice of intent is mailed after the new statute became effective. Thus, the new statute does not apply to the present case. The distinction between an expert for presuit purposes and an expert for purposes of testifying at trial appears to have been eliminated. Compare section 766.202(6), Florida Statutes (2003), with section 766.202(5), Florida Statutes (2002).