49 So.3d 802 (2010)
HOLMES REGIONAL MEDICAL CENTER, INC., Petitioner,
v.
David WIRTH and Renee Wirth, Respondents.
No. 5D10-423.
District Court of Appeal of Florida, Fifth District.
November 12, 2010.
Rehearing Denied December 22, 2010.
*803 David O. Doyle, Jr., Adam M. Pastis, and Charles T. Wells of Gray Robinson, P.A., Orlando, for Petitioner.
Barbara A. Eagan of Eagan Appellate Law, PLLC, Orlando, and Paul R. Linder of Griffin & Linder, P.A., Orlando for Respondents.
COHEN, J.
Holmes Regional Medical Center, Inc. (hereafter "HRMC"), petitions for a writ of certiorari, challenging an order denying its motion to dismiss the medical malpractice claim of David Wirth and Renee Wirth due to their alleged failure to comply with the pre-suit requirements of Chapter 766, Florida Statutes (2007). We deny HRMC's petition and hold that the affidavits submitted by the Wirths fulfilled the pre-suit requirements.
The complaint alleges that David Wirth was admitted to HRMC in November 2005, for evaluation and observation after complaining of abdominal pain. His physician prescribed narcotics, among other things, to address his pain, but the nurses did not monitor him appropriately for possible known side effects and failed to document his vital signs throughout the night. At 5:15 a.m., nurses found Mr. Wirth unresponsive and suffering respiratory distress. Mr. Wirth allegedly stopped breathing for thirteen minutes and suffered brain damage as a result.
In February 2008, the Wirths presented HRMC with a notice of intent to initiate litigation in accordance with Chapter 766. Attached to their notice was an affidavit and curriculum vitae from Elena Licata, R.N., B.S.N., C.D.M.S., C.C.M., Q.R.P. Ms. Licata's CV indicated that from 1993 through 2006, she was the president/owner of Medical Management and Re-Employment and it appeared that her responsibilities were primarily supervisory and administrative. Ms. Licata's affidavit did not indicate that she had any experience as a hospital nurse within the three years prior to Mr. Wirth's incident. However, the affidavit outlined Ms. Licata's understanding of the facts and her opinion that HRMC and its staff were negligent and breached the applicable standard of care which caused severe harm to Mr. Wirth.
HRMC notified the Wirths that it believed Ms. Licata was not qualified to render an expert opinion. HRMC asserted that it was very clear from Ms. Licata's CV that she had not devoted any time to clinical practice or consulting in hospital-based nursing since 1993, and did not have the appropriate training or experience to opine about the medical causation of Mr. Wirth's injuries for pre-suit purposes. Insisting that Ms. Licata exceeded the necessary qualifications, the Wirths served their complaint on HRMC. In response, HRMC moved to dismiss based on the Wirths' failure to comply with Chapter 766's pre-suit requirements.
Prior to the hearing on the motion to dismiss, the Wirths filed a second affidavit from Ms. Licata to clarify her qualifications. In relevant part, this affidavit stated that since August 1985, Ms. Licata
worked as a medical case manager providing nursing care and consultation for all types of orthopedic and neurologic *804 injuries, including many catastrophic cases that involve traumatic brain injury, spinal cord injury and multiple traumas. In assessing, coordinating, evaluating, documenting and providing patient teaching and hands on medical care, I have to frequently consider the impact that all types of pre-existing or other medical conditions (i.e., cardiovascular, respiratory, gastroenterology, endocrinology, urology) may have in my patients' total recovery. From my experience as both a floor nurse and as a medical case manager, I can affirm that I typically spend more time with a patient and their doctors and in assessing and coordinating their medical care than a hospital floor nurse, who typically practices in one specialty area.
Ms. Licata further averred that her training and experience enabled her to state, within a reasonable degree of certainty that "a patient left without sufficient oxygen over a 3-6 minute period of time would incur loss of brain cells and permanent brain damage and/or death as a result."
At the motion to dismiss hearing, the trial court found the affidavits were insufficient because Ms. Licata did not specifically "tie down" her experience for the three years prior to the incident, but only generalized about her experience for the past thirty-one years. However, the trial court granted the Wirths ten days to file an amended affidavit that "clarified" Ms. Licata's experience for the three years prior to the incident. The Wirths timely filed the third, "clarifying" affidavit. Read in its entirety, Ms. Licata averred that, from 2002-2005, she worked as a nursing and medical consultant. In this capacity, she actively consulted with patients and their medical providers to assess, recommend, and coordinate the patients' medical care.
HRMC renewed its motion to dismiss, still asserting the affidavits were insufficient. Just prior to the hearing on HRMC's motion to dismiss, the Wirths filed a fourth affidavit from Ms. Licata. At the hearing on HRMC's renewed motion to dismiss, HRMC argued that the third and fourth affidavits were filed outside the statute of limitations and, additionally, the fourth affidavit was untimely. Without addressing this argument, the trial court denied the motion to dismiss.
HRMC's petition for writ of certiorari challenges whether the Wirths satisfied the pre-suit notice requirements set forth in subsection 766.203(2), Florida Statutes (2007). Specifically, HRMC asserts that Ms. Licata's affidavits did not establish that she engaged in the active clinical practice or consulting with respect to nursing during the three years prior to the incident to qualify her as a medical expert. HRMC also contends that Ms. Licata was not qualified to render an opinion on causation.
Granting certiorari relief is an extraordinary remedy. As such, it requires the petitioner to establish a departure from the essential requirements of law that has resulted in a material injury that cannot be remedied on appeal. Bared & Co., Inc. v. McGuire, 670 So.2d 153, 156 (Fla. 4th DCA 1996). This court's prior precedent establishes that certiorari review is proper when a plaintiff fails to comply with section 766.203's pre-suit notice requirements. See Cent. Fla. Reg'l Hosp. v. Hill, 721 So.2d 404, 405 (Fla. 5th DCA 1998). Thus, the issue is whether the trial court departed from the essential requirements of law in denying HRMC's motion to dismiss. As the supreme court has directed, this court should only exercise its discretion to grant certiorari relief "when there has been a violation of a clearly established principle of law resulting *805 in a miscarriage of justice." Combs v. State, 436 So.2d 93, 96 (Fla.1983).
An injured plaintiff who desires to institute a medical malpractice suit must first conduct an investigation that provides reasonable grounds to believe that the defendant(s) was negligent and that negligence resulted in injury. § 766.203(2). After conducting this investigation, the plaintiff must then serve each defendant with a notice of intent to initiate litigation. § 766.106(2)(a). This notice must be corroborated with a "verified written medical expert opinion from a medical expert as defined in s. 766.202(6)." § 766.203(2).
A medical expert is "a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who meets the requirements of an expert witness as set forth in s. 766.102." § 766.202(6). As the parties recognize, Ms. Licata could qualify as an expert "health care provider other than a specialist or a general practitioner" if she "devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action" to the "active clinical practice of, or consulting with respect to, the same or similar health profession as the health care provider against whom or on whose behalf the testimony is offered." § 766.102(5)(c).
The purpose of these requirements is to screen out frivolous claims, give a defendant notice of a potential claim so it can investigate the matter, and if the claim has merit, promote pre-suit settlement. Apostolico v. Orlando Reg'l Health Care Sys., Inc., 871 So.2d 283, 286 n. 3 (Fla. 5th DCA 2004). They are not intended to be a Daedalean labyrinth that denies a plaintiff access to the courts. Id. at 286.
In rejecting HRMC's argument that Ms. Licata did not qualify as a medical expert, this court initially assumes, but does not decide, that the fourth affidavit was filed outside of the applicable statute of limitations period, as HRMC asserts.[1] However, a review of the second and third affidavits indicate that in the three years prior to Mr. Wirth's incident, Ms. Licata did, in fact, actively engage in both the practice of nursing and nurse consulting.[2] Although it is not clear which affidavit(s) the trial court relied on in reaching its decision, it could have looked at all three affidavits in their totality. The third affidavit clarified and supplemented the second, as the second had the first. Consequently, the trial court properly determined that Ms. Licata was qualified to opine about the prevailing professional standard of care for hospital nurses for purposes of pre-suit notice.
HRMC also contends that Ms. Licata was not qualified to render a causation opinion because she did not have any expertise in neurology or neurological injuries to "corroborate medical causation between alleged nursing negligence . . . with a serious brain injury manifesting in short term memory loss, impulsivity, attention deficit, generalized pain and impaired manual motor function. . . ." However, Ms. Licata did not attempt to identify the specific *806 extent or nature of Mr. Wirth's injuries. Instead, she averred that Mr. Wirth was not breathing for thirteen minutes, as a result of his respiratory distress, and that serious brain damage or death could result if a person was deprived of oxygen for three to five minutes. Given the experience and background set forth in her CV and affidavits, Ms. Licata was qualified to offer this opinion both pre-suit and at trial. The fact that she did not state the specific nature and extent of Mr. Wirth's injuries is not dispositive because section 776.203 only requires the expert corroborate reasonable grounds that negligence occurred and caused injury. Ms. Licata's affidavits satisfied this requirement.
When Ms. Licata's three affidavits are reviewed in their totality, they are sufficient to qualify her as an expert under section 776.102, and to corroborate that HRMC committed negligence and that negligence caused Mr. Wirth's injuries. Consequently, we affirm the trial court's order denying HRMC's motion to dismiss.
PETITION FOR WRIT OF CERTIORARI DENIED.
GRIFFIN, J., concurs.
LAWSON, J., dissents with opinion.
LAWSON, J., dissenting.
I respectfully dissent. In my view, none of Nurse Licata's affidavits demonstrate that she was qualified to render an opinion regarding the standard of care for hospital nurses monitoring a patient in Mr. Wirth's condition.[3] Instead, Nurse Licata's affidavits and CV demonstrate that her experience in the three years prior to Mr. Wirth's injury was limited to the rehabilitation of persons impaired as a result of some medical condition. Although the later affidavits attempt to demonstrate that Nurse Licata was qualified to render her standard of care opinion by virtue of her "consulting" in a hospital setting, it appears that she was simply consulting with hospital patients regarding their rehabilitation plan  not consulting with clinical hospital nurses regarding the monitoring of patients in their care.
The statute requires a health care provider to have "devoted professional time during the 3 years immediately preceding the date of the" alleged negligence either to the "active clinical practice of, or consulting with respect to, the same or similar health profession as the health care provider against whom . . . the testimony is offered[.]" § 766.102(5)(c), Fla. Stat. (2007). Because it is not clear that Nurse Licata meets that requirement in this case, I would remand for an evidentiary hearing on the matter, as the Second District recently did in Holden v. Bober, 39 So.3d 396 (Fla. 2d DCA 2010).
In doing so, I would expressly reject petitioner's argument that a trial court can only consider facts regarding a purported expert's qualifications that appear in an affidavit served prior to expiration of the statute of limitations.[4] Rather, as explained *807 in Holden, the hearing to determine pre-suit compliance, provided for in section 766.206, Florida Statutes, may necessarily need to be an evidentiary hearing.[5] Section 766.206(1) delays this hearing until after the completion of pre-suit discovery. So, it seems reasonable to read the statute as contemplating that evidence uncovered during pre-suit discovery might be presented at the hearing. And, as a practical matter, that hearing might routinely be held after expiration of the statute of limitations. Given those facts, it does not make sense to read the statute as limiting the hearing to consideration of the attestations of qualification that appear in the original affidavit.
Finally, I am uncomfortable with the majority's finding that Nurse Licata is categorically qualified to render a proximate cause opinion in this case. If the only question is whether cessation of breathing for thirteen minutes leads to brain damage, I would agree with the majority that any licensed health care provider is probably qualified to testify to that. But, I am not convinced the issue is that simple. See Apostolico v. Orlando Regional Health Care Systems, Inc., 871 So.2d 283, 288 (Fla. 5th DCA 2004) ("complex medical and factual issues are involved in a determination of proximate cause in a medical malpractice case").[6] For that reason, I would have the trial court take evidence on this issue as well. Clearly, a more fully developed record would aid the court in determining what "medical and factual issues" are involved in rendering a qualified proximate cause opinion in this case.
NOTES
[1] At oral argument, HRMC asserted that only the first affidavit was filed within the statute of limitations. This argument was not raised before the trial court or in its petition, and therefore, appears to be raised for the first time at oral argument. Further, it is not apparent from the appendix submitted with the petition when the statute of limitations expired, and thus, we do not address this issue.
[2] In this court's view, the second affidavit was more than sufficient to establish Ms. Licata's qualifications as a medical expert under the statute.
[3] Both parties seem to accept clinical hospital nursing as a unique "health profession," such that a nurse without the requisite experience in that setting could not render an opinion as to the prevailing standard of care for nurses practicing as clinical hospital nurses. This makes sense. To take the apparent facts of this case, for example, I do not see how a nurse who had spent the previous decade in a patient rehabilitation specialty would be qualified to render an opinion as to the prevailing standard of care for in-hospital patient monitoring.
[4] I agree with this court's opinion in Yocom v. Wuesthoff Health Systems, Inc., 880 So.2d 787 (Fla. 5th DCA 2004), holding that a claimant who failed to serve an affidavit at all before the statute of limitations ran could not cure the pre-suit defect by filing an untimely affidavit. Similarly, it follows that a claimant cannot cure a defective pre-suit affidavit by serving an affidavit from a new or different expert, after the statute of limitations has run. But, the question of whether a person was actually qualified to render an otherwise sufficient opinion timely served seems categorically different. In the latter case, the claimant is simply being given an opportunity to provide clarifying information on historical facts.
[5] For example, if the parties dispute whether a claimant's expert was a "licensed health care provider," as required by section 766.102(5), it is difficult to see how that dispute could be resolved absent fact-finding at an evidentiary hearing.
[6] The Apostolico panel held that a registered nurse could provide a medical causation opinion, in certain cases, for presuit purposes. Id. at 287 ("We conclude that a plain reading of section 766.202(5) indicates that a nurse or any other medical professional, with appropriate experience or training, may, under the proper facts, be qualified to provide corroboration about medical causation for presuit purposes.") This holding was based upon language in the 2002 version of the statute, which provided "a less stringent standard for qualification of experts in the medical malpractice presuit screening process than might be required of an expert to offer testimony at trial." Id. at 288, n. 4. The language relied upon by the Apostolico panel was removed from the statute in 2003. See Laws of Fla., Ch. 2003-416, § 58.