LAWSON, J.,
dissenting.
I respectfully dissent. In my view, none of Nurse Licata’s affidavits demonstrate that she was qualified to render an opinion regarding the standard of care for hospital nurses monitoring a patient in Mr. Wirth’s condition.[3] Instead, Nurse Licata’s affidavits and CV demonstrate that her experience in the three years prior to Mr. Wirth’s injury was limited to the rehabilitation of persons impaired as a result of some medical condition. Although the later affidavits attempt to demonstrate that Nurse Licata was qualified to render her standard of care opinion by virtue of her “consulting” in a hospital setting, it appears that she was simply consulting with hospital patients regarding their rehabilitation plan — not consulting with clinical hospital nurses regarding the monitoring of patients in their care.
The statute requires a health care provider to have “devoted professional time during the 3 years immediately preceding the date of the” alleged negligence either to the “active clinical practice of, or consulting with respect to, the same or similar health profession as the health care provider against whom ... the testimony is offered[.]” § 766.102(5)(c), Fla. Stat. (2007). Because it is not clear that Nurse Licata meets that requirement in this case, I would remand for an evidentiary hearing on the matter, as the Second District recently did in Holden v. Bober, 39 So.3d 396 (Fla. 2d DCA 2010).
In doing so, I would expressly reject petitioner’s argument that a trial court can only consider facts regarding a purported expert’s qualifications that appear in an affidavit served prior to expiration of the statute of limitations.[4] Rather, as ex *807 plained in Holden, the hearing to determine pre-suit compliance, provided for in section 766.206, Florida Statutes, may necessarily need to be an evidentiary hearing.[5] Section 766.206(1) delays this hearing until after the completion of pre-suit discovery. So, it seems reasonable to read the statute as contemplating that evidence uncovered during pre-suit discovery might be presented at the hearing. And, as a practical matter, that hearing might routinely be held after expiration of the statute of limitations. Given those facts, it does not make sense to read the statute as limiting the hearing to consideration of the attestations of qualification that appear in the original affidavit.
Finally, I am uncomfortable with the majority’s finding that Nurse Licata is categorically qualified to render a proximate cause opinion in this case. If the only question is whether cessation of breathing for thirteen minutes leads to brain damage, I would agree with the majority that any licensed health care provider is probably qualified to testify to that. But, I am not convinced the issue is that simple. See Apostolico v. Orlando Regional Health Care Systems, Inc., 871 So.2d 283, 288 (Fla. 5th DCA 2004) (“complex medical and factual issues are involved in a determination of proximate cause in a medical malpractice case”).[6] For that reason, I would have the trial court take evidence on this issue as well. Clearly, a more fully developed record would aid the court in determining what “medical and factual issues” are involved in rendering a qualified proximate cause opinion in this case.

. Both parties seem to accept clinical hospital nursing as a unique "health profession,” such that a nurse without the requisite experience in that setting could not render an opinion as to the prevailing standard of care for nurses practicing as clinical hospital nurses. This makes sense. To take the apparent facts of this case, for example, I do not see how a nurse who had spent the previous decade in a patient rehabilitation specialty would be qualified to render an opinion as to the prevailing standard of care for in-hospital patient monitoring.

. I agree with this court’s opinion in Yocom v. Wuesthoff Health Systems, Inc., 880 So.2d 787 (Fla. 5th DCA 2004), holding that a claimant who failed to serve an affidavit at all before the statute of limitations ran could not cure the pre-suit defect by filing an untimely affidavit. Similarly, it follows that a claimant cannot cure a defective pre-suit affidavit by *807 serving an affidavit from a new or different expert, after the statute of limitations has run. But, the question of whether a person was actually qualified to render an otherwise sufficient opinion timely served seems categorically different. In the latter case, the claimant is simply being given an opportunity to provide clarifying information on historical facts.

. For example, if the parties dispute whether a claimant’s expert was a "licensed health care provider,” as required by section 766.102(5), it is difficult to see how that dispute could be resolved absent fact-finding at an evidentiary hearing.

. The Apostólico panel held that a registered nurse could provide a medical causation opinion, in certain cases, for presuit purposes. Id. at 287 ("We conclude that a plain reading of section 766.202(5) indicates that a nurse or any other medical professional, with appropriate experience or training, may, under the proper facts, be qualified to provide corroboration about medical causation for presuit purposes.”) This holding was based upon language in the 2002 version of the statute, which provided "a less stringent standard for qualification of experts in the medical malpractice presuit screening process than might be required of an expert to offer testimony at trial.” Id. at 288, n. 4. The language relied upon by the Apostólico panel was removed from the statute in 2003. See Laws of Fla., Ch. 2003-416, § 58.